## Commonwealth v. Rivera

*Gary E. Hartman,* district attorney, for the Commonwealth.

*John D. Kuhn,* for defendant.

SPICER, *P.J.,* January 28, 1983 — Defendant has filed post-verdict motions in which he raises the single issue of whether evidence of an overt act was legally sufficient to justify verdicts of guilty to conspiracy. Defendant was found guilty by a jury of conspiracy to commit escape and robbery. He was found not guilty of conspiracy to commit murder and kidnapping. The court sustained demurrers to charges of solicitation and attempt.

Trial occurred October 6 and 7, 1982. Testimony has been reduced to transcripts. We refer to transcripts by the names of the reporters who filed them. The transcript of the October 6 proceedings was prepared by Alicia Wooters and October 7 proceedings by Rhonda Kershner.

Testimony at trial established that defendant was incarcerated in the Adams County Prison during the month of May, 1982. Also incarcerated were Commonwealth witnesses Roy Anderson, Michael Nicholson, John Armstrong, and Martin Parsons. Another witness, Bernard Robinson, was a prison guard.

Anderson and Nicholson were involved in the conspiracy. Armstrong, although providing some information to the conspirators, was not directly involved. Parsons was not involved at all. In fact, it was he who reported the plot to prison officials and thwarted their designs.

The plan was described by Nicholson as follows:

"Q. From this point on in your own words tell the jury and the judge what you started to talk about with Mr. Rivera out there at the Adams County Jail?

A. We were talking about making an escape from the Adams County Prison. The way it was supposed to happen was me, Tito and Roy Anderson, he was another inmate that was involved in it at the time, and we were supposed to — well, Rivera, Felix, Tito, he was going to make a request to make a phone call at which time he would go out and somehow strong-arm the two guards that were working and lock them in the hole or lock them in the basement area. Then he would get one of the guards' guns to make sure, you know, because they were kept underneath the desk at the counter at the Adams County Prison. At which time he had them locked up he was going to come back and get me and Roy out of the block area. We were going to come out and clear out inmates accounts, the money they had in their accounts out there and then we were going to take one of the guards' cars and go to a local convenience store where we'd rob the convenience store to get some more money and plus take a hostage from the convenience store. We'd also take the store operator's car. Then we were going to go to New York where we'd get passports and get false identification and leave the country" (Wooters at 47-48).

The escape attempt was to occur Thursday evening June 3, 1982, because of jail activities which gave the conspirators hope for success. Each participant was assigned a role. Nicholson described Rivera's role as follows:

"Q. What part of the plan was the responsibility of Felix or Tito?

A. He was supposed to be the one that requested the phone call to go out and take care of the guards

and do whatever he had to do to them to get them locked in the hole and then he was going to come back and get me and Roy out of the blocked area." Id. at 49.

Armstrong and Parsons corroborated this version of defendant's planned function.

Robinson testified that defendant requested permission to make a telephone call on May 30, 1982. Because of prison policy, a request to make a telephone call was required to be submitted in writing at least three days in advance of the call. Therefore, a request to make a call on Thursday, June 3, would have had to have been submitted on Monday, May 30. Robinson told Rivera to fill out a request.

However, there were times when this rule was waived depending upon the prison staff. Robinson said Rivera repeated his request verbally during the day on Thursday and Robinson told him he would pass the request on to the night staff.

Nicholson said he asked Rivera about the phone call arrangements on Monday and was told "everything was taken care of."

Rivera took the stand and denied all involvment in the plan.

This court ruled at trial that the Commonwealth's evidence concerning an overt act was sufficient to have the case go to the jury. In discussions with counsel after demurrers had been entered, the court said:

"The Court: I have problems with the solicitation, and I have problems with the attempt. As far as the conspiracy, the requirement for an overt act does not have to reach.— the act doesn't have to be a major step. It doesn't even have to be a really tremendously significant step. All it has to be is some act that you can point to and say that the people have left the area of just talking about something and

that they have started to do something about that which they have been talking.

Even though the Defendant can certainly argue and make the arguments that he has made to the jury about the significance of the act and was it really in furtherance of conspiracy, I think that there is enough to take the conspiracy charges to the jury. The demurrer as to those based upon your present argument is overruled." Id. at 106-107.

The court thereafter instructed the jury in accordance with standard jury instructions:

"It is not necessary that an overt act be a very significant step toward the commission of the crime which is the object of the conspiracy." Kershner at 38.

Defendant argues that an overt act must be something more than an oral request to do something in the future. He contends that the act must be in somewhat the same fashion as the substantial step required for the commission of an attempt.

Neither counsel have been able to cite Pennsylvania cases and the court has not been able to discover any by its own research. Therefore, we must look to the general body of law in this area.

The requirement of an overt act to impose criminal liability is statutorily imposed. The general law on this subject is stated as follows:

"At common law a criminal conspiracy was completed when the agreement was made, and an overt act was not a necessary incident of the crime. In the absence of a controlling statute, the common-law rule is generally accepted in this country.

Where an overt act is required for a conspiracy prosecution, it must be an act done for the purpose of carrying out the conspiracy, a step toward its execution, and a manifestation that the conspiracy is at work. A single overt act before termination of the

conspiracy, committed by one of the coconspirators, is sufficient. But an act prior to the conspiratorial agreement cannot be an overt act.

The overt act may be the substantive offense alleged to be the purpose of the conspiracy, but it need not constitute the crime that is the object of the conspiracy. It may be itself a totally innocent act, and not a crime at all." (Footnotes omitted) 16 Am. Jur. 2d, Conspiracy, §15 at 230-231.

If an overt act shows that action in the conspiracy has begun, it is sufficient. 15A C.J.S. Conspiracy §43(2) and illustrative cases cited in the footnotes on page 752 therein.

In states in which the legislatures have not defined overt acts in solicitations and attempts, there are numerous cases which hold that such acts need only be slight. 22 C.J.S. Criminal Law §75(2)b, f.n. 16 at 233.

In our jurisdiction, the legislature has not equated the overt act required to make conspiracy actionable with the substantial step requirement of attempt. It would, therefore, seem that we should adopt the standard accepted generally and require only that the act signify that the conspiracy has passed beyond a discussion stage. The act alleged and proved in this case could have been determined by the jury to have shown this.

Thus, the attached order will be entered.

## ORDER OF COURT

And now, this January 28, 1983, defendant's post-verdict motions are overruled. He is directed to appear for sentencing March 14, 1983, at 9:00 a.m. The probation office shall update its presentence report prior to the time of sentencing.